James F. Kahn - 003063
Krystal M. Ahart - 029358
**JAMES F. KAHN, P.C.**
**BANKRUPTCY LEGAL CENTER™**
301 E. Bethany Home Rd., Suite C-195
Phoenix, AZ 85012-1266
Phone: 602-266-1717
Fax: 602-266-2484
Email:  James.Kahn@azbar.org
Attorneys for Stool and Dinette Factory, Inc.,
       Debtor and Debtor-In-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: ) | In Proceedings Under Chapter 11 |
| ) | |
| STOOL AND DINETTE FACTORY, INC., ) | Case No.:  2:13-bk-17120-EPB |
| ) | |
|        Debtor and ) | |
|        Debtor-In-Possession. ) | |
| ) | |

**EMERGENCY MOTION FOR INTERIM AND FINAL AUTHORITY TO 1) USE CASH AND OTHER COLLATERAL; 2) PROVIDE ADEQUATE PROTECTION; AND 3) OBTAIN CREDIT**

      Stool and Dinette Factory, Inc., as Debtor and Debtor-in-Possession ("Debtor"), through its undersigned counsel, requests authority, on an interim and final basis, to use cash and other collateral (inventory), to provide adequate protection of the secured creditors' interest in the collateral, and to obtain unsecured credit.  This Motion is accompanied by a <u>Motion for Accelerated, Preliminary Hearing</u> to establish immediate authority to use cash collateral and inventory. This Motion is brought pursuant to 11 U.S.C. §§ 363 and 364, Fed. R. Bankr. P. 4001(b) and the Memorandum of Points and Authorities which follows.

      DATED this 17th day of July, 2013.

                                          JAMES F. KAHN, P.C.

                                          <u>/s/ James F. Kahn, SBN003063</u>
                                          Attorney for Debtor and Debtor-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

A.  **FIRST DAY MOTION INFORMATION**

The following information is provided in compliance with Rule 4001(b)(1)(B) Fed. R. Bankr. P., and Rule 4001-4 Local Rules of Bankruptcy Procedure:

1.  Debtor brings this Motion seeking authority to use inventory and cash collateral in the ordinary course of business, i.e. inventory to continue retail sales, which is the Debtor's principal business, and cash to fund the day-to-day operations of the business including, without limitation, acquisition of new inventory for sale. The inventory, cash, accounts, and accounts receivable Debtor seeks to use may be collateral securing liens, loans or extensions of credit by the following creditors:

> A. The Payables Management Group, LLC, pursuant to a contract and security agreement, copies of which are in possession of the Debtor and the creditor; a copy of the financing statement may be found in the records of the Arizona Secretary of State under file number 2005-138-5704-8; (See Exhibit "A");
>
> B. Debera A. Butler, pursuant to a promissory note and security agreement, copies of which are in possession of the Debtor and creditor; a copy of the financing statement may be found in the records of the Arizona Secretary of State under file number 2013-173-9194-0; (See Exhibit "B");
>
> C. Arizona Department of Revenue, pursuant to a Notice of State Tax Lien filed with the Arizona Secretary of State under file number 2010-162-5434-2; (See Exhibit "C").

These creditors are collectively referred to herein as the "Secured Creditors."

2. Debtor proposes to use the following collateral (values are as of the date of bankruptcy, except where otherwise indicated):

a) Funds in bank: $1,261.95;

b) Accounts receivable: $0.00;

c) Inventory: $100,473.76[1] (the "Pre-Petition Inventory").

3. Debtor proposes to grant to the Secured Creditors a postpetition security interest in inventory acquired postpetition, and the proceeds thereof. The value of the post-petition secured interest shall not exceed the value (at cost) of the Pre-Petition Inventory, plus the value of cash collateral as indicated in paragraph 2, above.

4. To the extent that the value of collateral is reduced, Debtor will pay Secured Creditors commensurate with the depleted values, as their priorities may appear.

5. The priority of the postpetition security interests given to each Secured Creditor shall be in the same priority as the prepetition security interests.

6. In this Motion, Debtor does NOT seek findings, conclusions, holdings or orders as to the amount of a secured debt or the validity, perfection and scope of the security interests securing such debt, other than to show that the respective Secured Creditors' interests, if any, are adequately protected or that their interest in collateral will not be adversely impacted.

7. Debtor does NOT propose a release, waiver or abandonment of claims, setoff rights, surcharge rights, avoidance actions or subordination actions, if any, against any secured creditor, nor findings or stipulations that no such rights exist.

---

1. As of July 15, 2013.
13120.d04b First Day-Cash Collateral.docx

8. Debtor DOES seek to confirm its authority under 11 U.S.C. § 364 to incur unsecured credit with trade vendors, including possibly consignment credit whereby post-petition consignors will conditionally retain title and the right to withdraw their goods without further notice, together with confirmation that the goods consigned post-petition are not subject to the claims of prepetition secured creditors unless the consignors are paid in full.

9. Debtor does NOT propose to prime any secured creditor under § 364(d).

**B.     JURISDICTION AND VENUE**

10. On July 16, 2013 and (the "Petition Date") the Debtor filed a Voluntary Petition in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code, commencing this Chapter 11 case (the "Chapter 11 Case"

11. The Debtor continues to operate its businesses and manage its assets as a Debtor-In-Possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

12. No trustee or examiner has been appointed, and no committee has been appointed.

13. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1403 and 1409.

14. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

15. The statutory predicates for the relief requested herein are §§ 105, 363 and 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b), 6003 and 6004.

/ / /

**C.    BACKGROUND**

16.    Stool and Dinette Factory, Inc., is an Arizona Corporation with Its principal place of business in the City of Phoenix, County of Maricopa, State of Arizona.

17.    Stool and Dinette Factory, Inc., is a retailer of household furniture and furnishings.

18.    Stool and Dinette Factory, Inc., was started in 1982. Throughout its more than 30 years of operations, the company has realized substantial successes and periods of financial challenge. It has managed to survive despite significant recessions, including the most recent, deepest and longest recession since the Great Depression. It is estimated that at least 225 furniture retailers in the State of Arizona have closed. Stool and Dinette Factory, Inc., has managed to survive this deep recession.

19.    To a very great extent, the company's sales track the home buying market. Although the volume of home sales is gradually creeping upward, it has not yet reached the stage to foster substantial sales of furniture and furnishings.  Nonetheless, the current upswing is promising and anticipated to enhance traffic for all retailers who are dependent, in one way or another, upon people (customers) moving from home to home, apartment or home, or even apartment to apartment.

20.    Despite the Debtor's successes, however, it has not been immune to the effects of the recent economic recession.  Although Stool and Dinette Factory, Inc., has generally operated efficiently with appropriate management oversight of its business, the deterioration in the market for household goods has made it impossible to operate profitably enough for the last few years and to retire legacy debt.

21. Stool and Dinette Factory, Inc., has continued to struggle through the recession. Revenues were significantly lower than expected. As a result, Stool and Dinette Factory, Inc., has been unable to meet its financial obligations to creditors. To facilitate its restructuring, Stool and Dinette Factory, Inc., has closed its branches in Chandler and Peoria, Arizona. This will substantially reduce overhead including rent and payroll, which were among Debtor's greatest ongoing expenses. Stool and Dinette Factory, Inc.'s central Phoenix store has traditionally been its most profitable facility. It is anticipated that the consolidation of inventory and the company's best salespeople will facilitate a return to profitability. The Debtor uses regionally targeted marketing; the centralization of its operations will allow a substantially more efficient program for marketing.

22. Stool and Dinette Factory, Inc. anticipates that these very significant changes in operations will enhance profitability and return the company to its prominence in the marketplace. Due to its delinquencies and reluctance on the part of the company's major creditors to accommodate payment plans, however, Stool and Dinette Factory, Inc.'s management made the decision to seek relief under Chapter 11 to permit it to, among other things, continue its business operations and allow it to manage, preserve and maximize the value of the assets of its Bankruptcy Estate for the benefit of its creditors.

23. Accordingly, on July 16, 2013 Stool and Dinette Factory, Inc., filed its Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code.

**D.     USE OF COLLATERAL AND CASH COLLATERAL**

24.     Prior to filing the Petition, Stool and Dinette Factory, Inc., had established secured credit accommodations with the secured creditors identified above excluding the Arizona Department of Revenue.  The Arizona Department of Revenue has filed a tax lien in the original amount of $257,507.36, pertaining to taxes from 2008-2009.  Although the Debtor had been making regular payments to the Department, to the best of Debtor's ability, the Department initiated levy proceedings against the Debtor's bank.  Prior to that, Debtor's secured and unsecured creditors remained mostly flexible and cooperative.  It is the fervent hope of Debtor's management that all of its creditors will be supportive of the Debtor's reorganization and facilitate this Debtor returning to profitability and prominence in the community.

25.     To the extent that any or all of the listed Secured Creditors assert a claim in "cash collateral" as that term is defined in 11 U.S.C. § 363, Debtor moves for authority to use the cash collateral and asserts that the interests of each of the Secured Creditors is adequately protected.

26.     Each of the creditors has, upon information and belief, perfected its security interest.

27.     Copies of the Financing Statements (including the description of collateral) for each Secured Creditor that asserts a claim in cash collateral, are attached as Exhibits "A" and "B."  The Arizona Department of Revenue asserts a lien against all property or rights to property belonging to Stool and Dinette Factory, Inc., as set forth in Exhibit "C."

28.     Stool and Dinette Factory, Inc. seeks authority to use its cash and cash collateral generated by the ordinary-course-of-business sales of its inventory so that it may operate its business on a daily basis without interruption. Stool and Dinette Factory, Inc. needs to use the cash collateral in order to: purchase inventory, pay post-petition rent and suppliers in the ordinary course of business, pay payroll and benefits to employees, as well as other expenses incurred in the ordinary course of business. See Debtor's Forecasted Profit & Loss, attached as Exhibit "D."

29.     Stool and Dinette Factory, Inc. has insufficient unencumbered funds with which to pay such operating expenses. If such expenses are not paid, Stool and Dinette Factory, Inc., will be unable to continue its business operations and will be unable to reorganize; this would not be in the best interest of creditors.

30.     Stool and Dinette Factory, Inc. proposes to protect the interest of the secured creditors in the cash, cash collateral and inventory that it seeks to use, by granting a postpetition security interest in the inventory Stool and Dinette Factory, Inc. purchases postpetition, and the proceeds thereof. The post-petition security interest shall remain in place upon the pre-petition and replacement inventory up to the value of the inventory as of the petition date or in the alternative, up to the amount of the indebtedness as reduced commensurate with the value of inventory sold and not replaced.

31.     Stool and Dinette Factory, Inc., hereby requests an emergency Preliminary Hearing on this Motion.  The amount of cash & other collateral sought to be used for operations pending the final hearing on this Motion is $100,000.00.

## E. OBTAINING POSTPETITION CREDIT

32. Debtor seeks confirmation of its authority pursuant to 11 U.S.C. § 364(a) to obtain unsecured credit from trade vendors and suppliers who are willing to provide inventory, equipment or services to the debtor on credit.

33. Additionally, Debtor seeks confirmation of its authority pursuant to 11 U.S.C. § 364(a) or in the alternative approval pursuant to 11 U.S.C. § 364(c)(2) to obtain credit from vendors on a consignment basis whereby post-petition consignors will conditionally retain title and the right to withdraw their goods without notice, together with confirmation that the goods consigned post-petition are not subject to the claims of prepetition secured creditors unless the consignors are paid in full.

34. The consignors will at all times retain title to consignment inventory until it is sold at retail, in the ordinary course of business, at which time title will pass to the purchaser.

35. The consignors will at all times be free to withdraw their inventory from Stool and Dinette Factory, Inc., without claim or encumbrance by the Debtor or its prepetition creditors.

## F. LEGAL AUTHORITIES

36. This Motion is brought pursuant to 11 U.S.C. § 363 (a), (c)(1), (c)(2)(B), (c)(3), (c)(4) and (e); § 364 (a), (b) and (c), Fed. R. Bankr. P. 4001(b), 6003 and 6004.

WHEREFORE, Stool and Dinette Factory, Inc., requests this Court's Interim Order:

a. Authorizing the sale of inventory that is collateral;

b.  Authorizing the use cash collateral in the amount and the manner described above;

c.  Granting a postpetition security interest in the assets described above, excluding consigned assets, to those creditors asserting rights in the inventory and/or cash collateral;

d.  Authorizing the Debtor to obtain credit in the form of consignment agreements from vendors willing to sell on the terms and conditions above;

e.  Establishing deadlines for creditors and other parties in interest to object to the interim orders and providing that, in the absence thereof, the interim orders may become final orders;

f.  Setting a hearing on Objections (if any) to the foregoing; and

g.  For other and further relief as may be just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 17th day of July, 2013.

        JAMES F. KAHN, P.C., dba
        BANKRUPTCY LEGAL CENTER™

        /s/ James F. Kahn, SBN003063
        James F. Kahn
        Attorney for Debtor and Debtor-in-Possession